And we will move to our last case of today, which is United States v. Robinson, 21-16-22. And we will hear first from Mr. Brangle. May it please the Court. I'm David Brangle. I represent Arthur Robinson. And the issue here today is can this Court grant Mr. Robinson relief from his Armed Crew of Criminal Act status? Did Mr. Robinson at his sentencing waive his ability to seek relief? Do extraordinary circumstances exist in this case that would allow the Court to reach the merits of his claim now? And if so, if so, after Borden is the Illinois statute of aggravated discharge of a firearm still a crime of violence. So, Your Honor, in our brief, I'm sure Your Honors are aware, we invite the Court to consider Mr. Robinson's position on his Armed Crew of Criminal Act status as a new twist on the objections of the first counsel. But, you know, I mean the government raises this point in a way, and I think it's a serious point. Borden, in part, I mean actually Borden is largely about recklessness and the fact that we need something more than recklessness if knowledge is required. And I'm just not sure that you're asking us to do anything other than what was well established in the law at the time Mr. Robinson was going through. It's just a comparison of the scope of the Illinois statute with the federal statute, and I don't see how Borden really changed that. Thank you for the question, Your Honor. I think what we would say to that, Your Honor, is initially I think in Borden the question presented to the Court was somewhat narrower than what we view the ultimate ruling to have been. And so I think it's true, as Your Honor observes, that initially the parties are concerned with recklessness when they brief everything. And then in the opinion it seems the Supreme Court announces that, you know, the violence must be directed at a person, not merely in the direction of people. And so it's because of that, Your Honor, that… But why isn't that an argument? I mean, the Illinois statute has not changed in material ways since this case has been knocking around. And this in the direction of language was there, and if it really has to be, you know, I'm trying to shoot an individual, you know, or I'm shooting into a crowd and there are a lot of people and I'm glad about that because I know I'm going to hit somebody or something. I don't know why that was unavailable. Thank you. Yeah, sure. I guess our response would be that we view the Curtis decision by this Court as really sort of shutting down that line of protesting on our part. I mean, you know, the way we view the Curtis decision is it's very clear that this statute is a crime of violence, and were Mr. Robinson to have raised that, it would have been, in my view, a frivolous argument. And so maybe not exactly as Your Honor has characterized it, but this Court's precedent was pretty clear that this statute was a crime of violence. And so, Your Honor, what sort of sets this case apart is that the board of language, to the extent that it calls into question Curtis, and we would respectfully suggest that it does, that is a new thing if it does. And it didn't before, and now it does. And not only is it a new thing, it's so new that it was not available to Mr. Robinson in his second sentence. So, you know, I hope that answers the Court's question. One thing I would like to say before I run out of time here on my rebuttal, in the government's brief, you know, they make the assertion at some point that this Nebinger case is nearly on point for them. And I would like to make some distinctions as I see it. First, in the Nebinger case, I think this Court criticized Nebinger for not raising any extraordinary circumstance. Here, we would argue there's extraordinary circumstances. The punishment Mr. Robinson faces, if this Court grants him relief, goes from a minimum of 15 down to a maximum of 10. Now, obviously, that's a lot of time. In addition, in Nebinger, it was an assertion of, for lack of, for a shorthand, sort of Ruth rights, you know, late in the game. And this Court, similar to the observation of Judge Wood, Ruth was available to a lot of people. No one thought of it for a long time. That's how I see it. Whereas here, the Curtis case, we would respectfully suggest, makes this Court's position on aggravated discharge of a firearm clear, and that it was a crime of violence. And so that argument was not available to Mr. Robinson. But, of course, we can only get there. I guess that's just to summarize. If Borden is a kind of intervening change in the law that reopens all these things, then we would need to worry about Curtis and all these other things. If Borden doesn't open that door for you, we don't get to it, right? I think you're right. Yeah, okay. Yeah. Your Honor, if it's okay with the Court, I'd like to reserve the remaining time for rebuttal. Thank you. All right. Mr. Hull. Good morning, Your Honors. My name is Chris Hale, and I represent the United States in this argument. As noted in the government's brief, we primarily raised three arguments, all of which we think are dispositive. But I believe that the first argument regarding waiver, on that alone, this Court can uphold the earlier decision or the acts on resentencing of the district court and preclude the argument that Mr. Robinson now makes. And that is waiver, basically, that the defendant, Mr. Robinson, intentionally and decidedly waived, not only at the district court on at least two occasions, but also on his first appeal, the very argument that he's attempting to make today. As mentioned in the brief, starting with the pre-sentence report, Mr. Robinson's prior counsel raised two objections, later withdrew one of them. Neither was the argument that's being made today. He first raised that the predicate offenses, including the aggravated discharge, were improperly being double-counted, that is, once to raise his guidelines, and secondly, to act as an ACCA predicate. This was one of the issues he also raised on his first appeal, and in which this Court declared that he, in fact, did not prevail on that issue, and it was not improper double-counting. But if Borden was truly an intervening case, it seems to me his earlier strategy stands in a different light. I know the government's position is that it isn't, but, you know, I don't think waiver would be the route if you were – the way he's presenting it now. Now, certainly, you've got all sorts of law of the case things, scope of appeals, and all the rest of it, if Borden's not a proper intervening case. Thank you for the question, Your Honor. Obviously, as you just noted, the government does hold that Borden does not create a new intervening case that is favorable to him. It doesn't change anything about the circuit's law on whether aggravated discharge of a firearm, especially under the 1991 version of that statute that the defendant was convicted under, was not or is not, as of today, a valid ACCA predicate offense. But he also wasn't precluded from making that argument at the time, and nothing in the Borden decision changes whether that argument was suddenly available to him. Since 2008, this circuit, as a result of the U.S. v. Smith decision decided that year, has held that offenses with only a reckless mental state could not serve as an ACCA predicate. He could have raised that argument at his original district court level or also in the first appeal. He chose not to, and the best argument he makes for doing so in his brief is that he didn't think his chances were great. He cites to no decision precluding his argument, only that Curtis would have made it difficult for him to prevail. And beyond just not raising that objection, the defendant in his allocution at sentencing affirmatively admitted that his three prior convictions that were properly violent felonies were in fact properly used. His statement is cited in the brief and in the record is that he agrees with the government about his past convictions. Those past convictions was used, in his words, on Chapter 4 enhancements in 2002, which was a prior case on application of career offender statute. He was sentenced to 188 months because of his past convictions, and his issue was, as he then said, today they're reusing the same identical three past convictions for another enhancement in an additional case. The next argument the government makes, which is also dispositive, is the mandate rule. This court remanded as a basis of the first appeal on a very narrow issue to the district court to resentence the defendant with the reimposition of his acceptance of responsibility points that this court held the district judge had improperly taken away. That is exactly what the district court did here. Despite the defendant pro se attempting to make new objections, the district court cut him off and said, we're not going to relitigate those issues. I have a very narrow scope of remand, and that's what we're going to do. And that's what occurred. And Hopper 2, which is a very new decision by the circuit, states that even a new potentially relevant case, such as the defendant argues Borden or appellant argues Borden is, does not allow a defendant to escape the mandate rule. So even if the defendant's interpretation of Borden was correct, that alone is not going to allow him to escape the mandate rule. Well, of course, there's some give in the mandate rule. It's not a jurisdictional rule. It's a rule of practice. Correct, Your Honor. But it certainly doesn't rise to the level of exceptional circumstances that appellant attempts to argue it does for the purposes. The only risk in the government's position, I get concerned about this from time to time, is that the harder you come down on waiver and that sort of thing, the more of an incentive you create for defense attorneys to raise countless close to frivolous issues in their appeals, whether it's, and you should overrule Curtis, and you should overrule A versus B, and you should overrule this or that, no matter how well established the circuit law is. And it's a rather perverse incentive for a responsible lawyer who's trying to see where is there room for an argument and where is the law quite well established. I don't think that your waiver position allows for established law, other than from the Supreme Court, I'll assume. Right, Your Honor. And the government would respectfully disagree with that assertion as perhaps being overly broad statement of its argument and waiver in general, but precedent is overturned all the time. There's new arguments and interpretations, and certainly the defendant could have argued that this – So no matter how well established it is, you think defendants at the risk of waiver need to raise points? No, I don't believe any argument, as you said, however frivolous it may be, has to be raised because if not, it's considered waived. Here, there was open to the defendant a not ridiculous or precluded argument that this statute, under which appellant was convicted, does in fact not have a mental state of knowingly, but rather recklessly, and as this circuit has established for at least a decade, crimes that have a recklessness mens rea are not appropriately ACCA predicate offenses. So I don't believe that is to the extent of a frivolous argument, but rather an interpretation of the mens rea of that statute. If the defendant's conviction and sentence had been complete at this point, and the defendant raised Borden in a habeas proceeding, a 2055 proceeding, would he have waived it or would he be able to raise it, even though I understand your position is that he would lose because it hasn't changed the law at all? I think the government's position is still in that hypothetical that it has been waived. I think perhaps the analysis is a bit different than on a direct appeal, or even a second appeal as we have here. But again, it was not an argument that, sure, it's based on a new case subsequent to both his conviction and your hypothetical. And it would result in miscarriage of justice, right? Because in this case, particularly because I believe his statutory maximum would be 10 years. Correct. I'm sorry, and your hypothetical was a sentence that had already been completed? No, no, no, no. There was just no appeal. We're beyond the Seventh Circuit here, and Borden is issued, and he raises it for the first time seeking habeas relief. If, and the government strongly disputes this, Borden did in fact create a brand new argument and in fact establish that the predicate offense of aggravated discharge was in fact not a valid predicate offense, then yes, I would say there would be certainly the argument and the conclusion that there had been a miscarriage of justice. But the government strongly denies that's what Borden in fact did. Right, I got that. I got that part of it. It's just, should we deal with it here, or do we, if we find waiver, then what? The government raises it again, I suppose. Certainly would still argue that had been waived, and I believe, well, extensive research wasn't done in that setting because that's not the context of this case, but I believe waiver would still be a valid argument that could and I'm certain would be raised by the government. It might be because of the timing of the Borden decision, right? Correct, correct. But again, I mean, that argument wouldn't have been precluded to a defendant, even who doesn't raise it in his direct appeal, but later raises it in a 2255. The argument is certainly there and certainly valid in the government's opinion to say you could have made this argument at the time. But I guess drawing to where the question seemed to be going, and I realize I'm about to run out of time, but Borden doesn't state anything new that applies to the defendant's prior conviction. And I see I'm out of time, so if you have no other questions, I'll sit down. Thank you. I don't see anything. Thank you very much. Last words, Mr. Brangle? Thank you, Your Honor. I welcome your question to the government about what a responsible practitioner would do. I do think that is a big issue in this case, and in so many cases where this court has to deal with career offender law changing and armed career criminal act law changing, that many, many times at the district court level, practitioners are, this may be a poor choice of words, are censoring themselves because they want to not jeopardize acceptance points as what happened here. They do not want to raise what the district court views as a frivolous argument to get whatever small benefit they could get for their client. And in light of the Curtis decision, which we view as very clear on this court's position with respect to the underlying conviction, it sort of makes sense that that was not raised at the district court level. We're arguing to the court. And to some of the worries of Judge Kirsch, there is this concern about, well, do you deal with this later? But I think arguably there's a bigger concern because district courts deal with it sooner. And so as Judge Wood pointed out, if the government is very successful at hammering waiver, waiver, waiver, waiver, then it means that we have to throw everything in the kitchen sink at the district court. If someone like Mr. Robinson can't get access to relief here, that's what we're left with. And so we're asking this court to have it not be that way. And one final word. I would just say, like, the government is arguing that Borden doesn't create a new thing. I think the language in Borden could have been different if the idea were to make it narrower. This idea that force must be directed at a person and not generally in their direction, I view as a significant development. And if I were defending Mr. Robinson's case now, I would probably do it differently than I might have in the past. Whether or not that prevails, I don't know. It's for, like, this court or another court to decide some other time. But I do think Borden makes a challenge to his status not frivolous now, whereas I think it would have been previously. Thank you. All right, thank you very much. Thanks to both counsel. The court will take this case under advisement, and we will be in recess.